**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | 8:10CR80 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | |
| ROSAURA CARRILLO-VELASQUEZ | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress filed by defendant Rosaura Carrillo-Velasquez (Carrillo-Velasquez) (Filing No. 35). Carrillo-Velasquez is charged in the Indictment with using false identification documents, i.e, a Colorado Identification Card and a Social Security number (Count I), in violation of 18 U.S.C. § 1546(a); the false representation she was a U.S. citizen (Count II) in violation of 18 U.S.C. § 911; and the false representation of a Social Security number with intent to deceive (Count III), in violation of 42 U.S.C. 408(a)(7)(B). Carrillo-Velasquez seeks to suppress any evidence derived from her arrest on March 9, 2010, at the Fremont Beef Company in Fremont, Nebraska, by agents of the U.S. Immigration and Customs Enforcement (ICE) of the Department of Homeland Security (DHS).

An evidentiary hearing was held on Carrillo-Velasquez's motion on July 23, 2010. Carrillo-Velasquez was present for the hearing along with her counsel, Bassel F. El-Kasaby. The United States was represented by Special Assistant U.S. Attorney Debra K. Robinson. Laura Garcia-Hein, a certified Spanish language interpreter, served as interpreter for the hearing. During the hearing, the court heard the testimony of ICE Special Agents David Gran (Agent Gran) and Henry Anton (Agent Anton). The court received into evidence the following exhibits: Exhibit 1 - notes for a Record of Deportable/Inadmissible Alien; Exhibit 2 - Form I-826 (Notice of Rights and Request For Disposition); Exhibit 3 - Statement of Rights. A transcript of the hearing (TR.) was filed on July 30, 2010 (Filing No. 46).

## FINDINGS OF FACT

Agent Gran has been employed by ICE since March 2003 with twelve years of prior experience with the Immigration and Naturalization Service (INS) (TR. 4). Agent Gran came into contact with Carrillo-Velasquez on March 8, 2010, during an I-9 audit by ICE at Fremont Beef in Fremont, Nebraska (TR. 6). The I-9 audit is an administrative investigation to review eligibility verification forms filled out at the time of employment (TR. 6). There had been some complaints with the Federal Trade Commission that social security numbers were being misused by employees at the Fremont Beef plant (TR. 37). Around 8:05 a.m., on the morning of March 8, 2010, numerous ICE agents traveled to the Fremont Beef plant and provided management with a list of names whom the ICE agents wanted to interview (TR. 7; 36). Approximately twenty employees were called into a conference room by the management as the ICE agents waited outside in the hallway (TR. 36 - 39). The ICE agents were handed individual ICE files of employees to be interviewed (TR. 9). The ICE agents were dressed in civilian clothing without any visible attire identifying them as ICE agents or police officers and all firearms were concealed (TR. 11).

Agent Gran was given the file of Olga Arguelles and he walked into the conference room and called out the name of Olga Arguelles (TR. 9). Agent Gran was seated at a table and the defendant Carrillo-Velasquez came forward and had a seat in a chair next to Agent Gran (TR. 9). Other interviews with other employees were being conducted simultaneously in the same conference room (TR. 9). Agent Gran identified himself as an ICE agent and showed Carrillo-Velasquez his official identification (TR. 9). Agent Gran asked her for her true and complete name to which Carillo-Velasquez immediately responded "Rosa Carrillo-Velasquez" (TR. 10; 12-13). Agent Gran then asked Carrillo-Velasquez where she was born and she replied "in Guatemala" (TR. 13). Agent Gran then asked Carrillo-Velasquez if she had any immigration documents and she replied that she did not (TR. 13). Agent Gran then asked Carrillo-Velasquez a few questions including whether she had any medical problems and whether she had relatives in the United States (TR. 14 - 15). The purpose of the questions was to determine if Carrillo-Velasquez would need medical care when taken into custody and whether she had any small children who would require arrangements for care taking (TR. 15). Agent Gran then told Carrillo-Velasquez she would

be taken into custody on an administrative arrest and taken to the detention center in Omaha, Nebraska (TR. 15-16). After Agent Gran finished asking Carrillo-Velasquez alienage questions as set forth on a form I-213, Agent Gran escorted Carrillo-Velasquez to a room across the hall from the conference room where those employees who had been taken into custody awaited transportation to the Omaha detention center (TR. 19; Exhibit 1).

Carrillo-Velasquez was later transported in a detention van to the Omaha detention center where she was processed (TR. 20). Agent Gran again saw Carrillo-Velasquez at the detention center where he took her biometrics, i.e., fingerprints and photograph, a normal booking process (TR. 20; 26). Agent Gran then entered Carrillo-Velasquez's data into various computer databases and he received feedback from various databases (TR. 32). Thereafter, various standard immigration forms were generated and Carrillo-Velasquez was advised of her immigration rights in Spanish by Agent Stork (TR. 52-53; Exhibit 2). Agent Anton was asked to conduct an interview with Carrillo-Velasquez (TR. 52). Agent Anton advised Carrillo-Velasquez of her Miranda rights in Spanish which Carrillo-Velasquez acknowledged (TR. 55-57; Exhibit 3). Agent Anton then conducted an interview of Carrillo-Velasquez in which she was questioned as to her employment with Fremont Beef, the documents she presented for employment, and where and how she obtained the social security card and Colorado ID (TR. 59).

## LEGAL ANALYSIS

Carrillo-Velasquez asserts she was in custody and interrogated without having been advised of her Miranda rights when she first appeared in the Fremont Beef plant's conference room, and any information obtained thereafter, either at the plant or later at the detention center, should be suppressed under the exclusionary rule of ***Wong Sun v. United States***, 371 U.S. 471 (1963).

In the morning hours of March 9, 2010, Carrillo-Velasquez was not in custody at the time Fremont Beef management asked numerous employees to come to the conference room. Carrillo-Velasquez's first meeting face-to-face with an ICE agent was when the name of Olga Arguelles was called out and she sat down with Agent Gran. She was not

in custody when Agent Gran identified himself and asked her name and country of origin. Requests for such basic identification or biographical information is not interrogation requiring **Miranda** advice. **United States v. Ochoa-Gonzalez**, 598 F.3d 1033, 1039 (8th Cir. 2010). Here, Carrillo-Velasquez was not detained until Agent Gran believed Carrillo-Velasquez was in the United States illegally. Agent Gran had a reasonable basis to detain Carrillo-Velasquez as a person illegally in the United States based upon her responses to his questions.

Once Carrillo-Velasquez was detained and transported to the Omaha ICE detention center, she was booked for administrative processing when certain identifying information was obtained including fingerprints. Again, **Miranda** warnings are not required for routine booking questions and the gathering of biographical information. **United States v. Reyes**, 908 F.2d 281 (8th Cir. 1990). No "interrogation" commenced until Agent Anton commenced to interview Carrillo-Velasquez. Before that interrogation, Carrillo-Velasquez was advised of her **Miranda** rights, which she waived, and thereafter explained to Agent Anton the false documents she used, where the false documents came from, and what she did with them.

The court must look to the totality of circumstances in determining whether or not the statements were voluntary. **Mincey v. Arizona**, 437 U.S. 385 (1978); **Colorado v. Connelly**, 479 U.S. 157 (1986); **Schneckloth v. Bustamonte**, 412 U.S. 218 (1973). In this case, Carrillo-Velasquez was advised of her constitutional rights in Spanish pursuant to **Miranda v. Arizona**, 384 U.S. 436 (1966). There is no evidence Carrillo-Velasquez did not understand the advisement of her rights. There is no evidence that her statements were other than voluntary as she was not promised anything, not coerced into making the statements, nor otherwise threatened. The court finds Carrillo-Velasquez's motion to suppress should be denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Carrillo-Velasquez's motion to suppress (Filing No. 35) be denied.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 21st day of September, 2010.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge